IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-01797-CNS

M.H.,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

    Defendant.

## ORDER

This matter is before the Court for judicial review of the Social Security Administration Commissioner's (the Commissioner's) decision denying Plaintiff M.H.'s application for disability insurance benefits (DIB) under Title II of the Social Security Act.[1] Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons below, the Court AFFIRMS IN PART and REVERSES IN PART the Commissioner's denial of benefits, and REMANDS for further analysis.

### I. BACKGROUND

M.H. was born on December 17, 1967 (Administrative Record (A.R.) at 277). Prior to the alleged onset of M.H.'s disability in 2018, she was employed by the Department of Defense as an Education Technician (A.R. at 327–34). M.H.'s position involved sitting for long periods of time, going to meetings, and working on a computer (A.R. at 153–54, 328–29). In September 2018, the

---

[1] Pursuant to D.C.COLO.L.APR 5.2(b), Plaintiff M.H. is identified by her initials only.

United States Office of Personnel Management approved M.H. for disability retirement due to cervical disc disease (A.R. at 989–92). M.H. has not worked since September 2018 (A.R. at 377).

M.H. was diagnosed with cervical disc disease in 2010 and reported symptoms of arm and neck pain (A.R. at 391). M.H. underwent a cervical fusion procedure in 2011 (A.R. at 391, 797, 802, 804). M.H.'s neck pain continued after the procedure, she has since had a series of joint injections, and takes opiates and muscle relaxants for pain relief (A.R. at 804, 929). An MRI in 2018 showed that M.H. continues to suffer from moderate degenerative disc narrowing (A.R. at 426). M.H. has also been diagnosed with carpal tunnel syndrome and fibromyalgia (A.R. at 446–47, 686, 797, 802, 934).

M.H. consistently reported neck pain and exhibited a limited range of cervical motion in medical examinations (A.R. at 391–92, 401, 727, 928, 932). M.H. saw several physicians regarding her cervical disc disease and other ailments between 2017 and 2019. (A.R. at 391–92, 401, 727, 928, 932). Three of M.H.'s treating physicians, Doctors Vetor, Young, and Kuprian, supplied letters that detailed M.H.'s physical limitations (A.R. at 945–50, 991–95, 996). These letters from Doctors Vetor, Young, and Kuprian, dated 2019, 2018, and 2017, respectively, reference M.H.'s limitations related to pain, including an inability to sit or stand for long periods of time, limited neck flexion and motion, and complications from her pain medications (A.R. at 945–50, 991–95, 996).

After filing her application for disability insurance benefits in January 2019, M.H. was seen by several doctors as part of the Social Security Administration's process for determining her application for disability insurance benefits (A.R. at 179, 186, 200, 356). In March 2019, Dr. Holtegrewe (a non-examining medical source) noted that M.H. suffered from pain and had limited cervical motion (A.R. at 186–88). In June 2019, Dr. Meter, a consultative examiner on behalf of

the Social Security Administration, performed a diagnostic examination of M.H. (A.R. at 356, 924–25). Dr. Meter determined that M.H. had a mildly limited range of cervical motion and experienced mild discomfort and neck pain as a result of cervical disc disease (A.R. at 932–34). In July 2019, Dr. Thommen, a non-examining medical source, noted that M.H. was limited by chronic neck pain (A.R. at 200). Doctors Holtegrewe, Meter, and Thommen all found that M.H. could sit for upwards of five hours, stand for upwards of five hours, walk for upwards of five hours, and lift and carry more than five pounds (A.R. at 187, 200, 934).

During the hearing regarding disability insurance benefits, M.H. alleged disability onset beginning September 11, 2018 (A.R. at 153).[2] M.H. was initially denied benefits in March 2019 (A.R. at 179). After reconsideration of M.H.'s claim, the Social Security Administration again denied her benefits in July 2019 (A.R. at 191). On August 9, 2019, M.H. requested a hearing before an Administrative Law Judge (ALJ), who held a hearing regarding M.H.'s claim in August 2020 (A.R. at 123). On October 16, 2020, the ALJ issued a written order denying M.H.'s application, concluding that M.H. was not "under a disability" as defined under the Social Security Act during the relevant period (A.R. at 123–38).

M.H. requested a review of the ALJ's decision by the Social Security Appeals Council (Appeals Council) (A.R. at 1). With her request for a review of the ALJ's decision, M.H. included seven pieces of additional evidence not presented to the ALJ (A.R. at 2, 9–119). In May 2020, the Appeals Council denied M.H.'s request for review via a written Notice of Appeals Council Action

---

[2] In her initial application, M.H. alleged disability onset beginning December 1, 2016 (A.R. at 181). During the hearing before the Administrative Law Judge (ALJ), M.H. modified the alleged onset date to September 11, 2018 (A.R. at 153). The Court notes that the alleged onset date has been inconsistently represented in filings since the hearing (ECF No. 1 at 1 (alleging onset of December 1, 2016); ECF No. 10 at 4 (alleging onset of September 11, 2018)). The Court further notes that the ALJ's order accepts the amended onset date of September 11, 2018, then concludes that M.H. "has not been under a disability within the meaning of the Social Security Act from December 1, 2016, through the date of [the ALJ's] decision" (A.R. at 124). Because the ALJ purported to accept the amended onset date in its written order and because neither party appeared to dispute the amendment, the Court assumes the onset date has been amended to September 11, 2018.

(Notice) (A.R. at 1–4). In the Notice, the Appeals Council noted that four of the seven pieces of additional evidence did not relate to the period at issue and the remaining three pieces did not show a reasonable probability of changing the outcome of the decision (A.R. at 1–4). M.H. sought timely review in this Court (ECF No. 1).

## II.  LEGAL STANDARD AND STANDARD OF REVIEW

An individual is disabled under the Social Security Act if they are unable to do "any substantial gainful activity" due to any medically determinable physical and/or mental impairment that can be expected "to last for a continuous period of not less than 12 months." *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). An individual bears the initial burden of establishing their disability. *See id.* at 1062. To determine whether an individual is disabled, courts use a five-step, sequential analysis that considers whether the individual:

    (1) is currently engaged in "substantial gainful activity";

    (2) has a "severe" impairment or impairments;

    (3) the impairment or impairments equals one of the impairments listed in the appendix of the relevant disability regulation;

    (4) the impairment or impairments prevent the individual from doing their past work; and

    (5) has the "residual functional capacity" to perform other work in the national economy

*Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)).  If Plaintiff "is not considered disabled at step three, but has satisfied their burden at steps one, two, and four, the burden shifts to the Commissioner" to show Plaintiff has the residual functional capacity (RFC) to perform other work in the national economy while considering their age, education, and work experience. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

4

The Court reviews the Social Security Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See, e.g.*, *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence" is evidence that is sufficient, based on the entire record, to support the ALJ's factual determinations. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2022). A district court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," but will "not reweigh the evidence or retry the case." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The threshold for this "evidentiary sufficiency is not high," and requires only enough evidence that a reasonable person might accept as adequate to support the ALJ's decision. *Id.* Nonetheless, a decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (quotation omitted).

### III.  ANALYSIS

Having reviewed the administrative record, the parties' briefs, and relevant legal authority, the Court affirms in part and reverses in part the Commissioner's denial of benefits. M.H. seeks reversal or remand of the Commissioner's decision on four grounds: (1) the Commissioner erred in failing to articulate the persuasiveness of additional evidence submitted to the Appeals Council; (2) the ALJ erred in finding Doctor Jane Young's written statement unpersuasive; (3) the ALJ erred in failing to articulate the persuasiveness of Doctor Mikhail Kuprian's written statement; and (4) the ALJ's analysis was not supported by substantial evidence and she improperly excluded M.H.'s chronic neck pain and limited range of cervical motion from the Residual Functioning Capacity (RFC) determination (ECF No. 10 at 8–17).  The Commissioner responds: (1) the Appeals Council is not required to articulate the persuasiveness of additional evidence submitted

to it and the additional evidence was cumulative of evidence before the ALJ; (2) Dr. Young's written statement is "other medical evidence" and the ALJ was not required to articulate a finding of persuasiveness; (3) Dr. Kuprian's written statement is "other medical evidence" regarding an issue reserved to the Commissioner and the ALJ was not required to articulate a finding of the statement's persuasiveness; and (4) the ALJ's RFC determination is supported by substantial evidence (ECF No. 15 at 7–21). The Court considers each of these arguments in turn.

### A. Submission of Additional Evidence

M.H. first contends that the Appeals Council erred by failing to analyze or articulate how persuasive it found the additional evidence submitted by M.H. with her appeal of the ALJ's decision (ECF No. 10 at 8–9). Specifically, M.H. argues that "[t]he Commissioner was required to articulate the persuasiveness of the opinion of Dr. Young using the factors listed in [20 C.F.R. § 404.1520c]." (ECF No. 10 at 10).[3] The Commissioner responds that the Appeals Council is not required to articulate factual findings on additional evidence when it denies review of an ALJ's decision (ECF No. 15 at 20). The Commissioner further argues that Dr. Young's letter was a statement on the final issue reserved to the Commissioner, and is cumulative of other evidence before the ALJ, namely a letter from Dr. Young dated July 2, 2018, which the ALJ found to be unpersuasive (ECF No. 15 at 20). The Court agrees with the Commissioner that the Appeals Council is not required to articulate factual findings on new evidence when it denies review of a case and that the Appeals Council's conclusion regarding Dr. Young's 2020 letter is supported by substantial evidence.

---

[3] M.H. does not dispute the Appeals Council's finding that four of the seven documents did not relate to the period at issue, nor does she dispute the Appeals Council's finding that two of the remaining three documents (treatment records from Colorado Springs Pain Consultants and treatment records from Young Chiropractic and Acupuncture) would not have changed the outcome of the ALJ's decision (ECF No. 10 at 10 n.3). M.H.'s only contention is that the Appeals Council's failure to articulate the persuasiveness of the 2020 statement from Dr. Young requires remand (ECF No. 10 at 10).

The Appeals Council will review a case on a party's request if, inter alia, it receives "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision[,] there is a reasonable probability that the additional evidence would change the outcome of the decision," and the party shows good cause for failing to provide the evidence to the ALJ. 20 C.F.R. § 404.970(a)(5), (b); *see also Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). In determining whether it must review a case, the Appeals Council need only "consider the new evidence, not expressly analyze it." *Vallejo v. Comm'r, SSA*, 762 F. App'x 532, 535 (10th Cir. 2019) (holding that "the Commissioner [had] not failed to apply the correct legal standard even though neither the ALJ nor the Appeals Council expressly weighed [the new evidence]"); *see also Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017) ("[The Appeals Council is] not required to follow the same rules for considering opinion evidence as the ALJ followed."); *Sewell v. Comm'r, SSA*, 20-1409, 2021 WL 3871888, at *4–5 (10th Cir. Aug. 31, 2021) (holding that the Appeals Council applied the correct legal standard when it was presented with additional evidence and "denied review [of the ALJ's decision] through its standard letter that explains the rules it applied but does not provide any analysis specific to the claimant's case.").

The Appeals Council, in its written Notice, informed M.H. that it had considered the additional evidence, including Dr. Young's letter, dated November 29, 2020, and had concluded that the evidence "does not show a reasonable probability that it would change the outcome of the [ALJ's] decision" (A.R. at 2). Because the Appeals Council is not required to expressly weigh new evidence, the Appeals Council applied the correct legal standard by considering the new evidence and concluding that there was no reasonable probability that it would change the outcome of the ALJ's decision. *See Vallejo*, 762 F. App'x at 535.

Additionally, the Appeals Council's decision is supported by substantial evidence. "Substantial evidence" is evidence that is sufficient, based on the entire record, to support a factual determination. *See Biestek*, 139 S. Ct. at 1154. The Court "consider[s] the entire record, including [any additional evidence submitted to the Appeals Council], in conducting our review for substantial evidence on the issues presented." *Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir. 2006).

As argued by the Commissioner, Dr. Young's 2020 letter is similar to and references Dr. Young's earlier letter dated July 2, 2018, which was before the ALJ (ECF No. 15 at 20; A.R. at 72, 994–95). The ALJ addressed Dr. Young's 2018 letter and found it unpersuasive (A.R. at 135–36). Because the two letters were similar and because the ALJ found the 2018 letter unpersuasive, there was substantial evidence for the Appeals Council to conclude that the 2020 letter from Dr. Young was cumulative or unpersuasive. *See Martinez*, 444 F.3d at 1208. Therefore, the Appeals Council's decision that the 2020 letter was without reasonable probability of changing the outcome of the ALJ's decision was supported by substantial evidence. *See id.* The Appeals Council applied the correct legal standard, and its decision is supported by substantial evidence. The Appeals Council committed no error in denying review of the ALJ's decision. *See Vallejo*, 762 F. App'x at 535; *Pisciotta*, 500 F.3d at 1075.

### B.  Dr. Young's Opinion

M.H. next argues that the ALJ did not have substantial evidence for finding the opinions of Dr. Young unpersuasive (ECF No. 10 at 11). M.H. contends that the ALJ "failed to address the fact that Dr. Young's [2017] opinion pertained to [M.H.'s] chronic pain in addition to her mental health and her gastrointestinal damage" (ECF No. 10 at 12). The Commissioner responds that Dr. Young did not author a "medical opinion" as defined by 20 C.F.R. § 404.1513(a)(2), so the ALJ

was not required to consider Dr. Young's letters (ECF No. 15 at 16–17). The Commissioner further contends that even if Dr. Young's letters are a medical opinion, the ALJ's determination that it was unpersuasive is supported by substantial evidence (ECF No. 15 at 17–18). The Court agrees with the Commissioner; Dr. Young's letters are not medical opinions under 20 C.F.R. § 404.1513(a)(2), and substantial evidence supported the ALJ's determination that the letters were unpersuasive.

First, because M.H. filed her application after March 27, 2017, it is subject to the current regulations governing ALJs' consideration of medical opinions. *See Roy o/b/o Helton v. Comm'r, SSA*, No. 22-5036, 2022 WL 17726702 at \*3 (10th Cir. Dec. 16, 2022); 20 C.F.R. §§ 404.1520c, 404.1513(a). 20 C.F.R. § 404.1513(a)(2), which defines what constitutes a "medical opinion," rather than "other medical evidence," was modified on March 27, 2017. *Roy o/b/o Helton*, 2022 WL 17726702, at \*3. "[U]nder the [current regulations], '[a] medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [a claimant has] one or more impairment-related limitations or restrictions in the . . . ability to perform physical demands of work activities . . . including manipulative or postural functions[.]" *Id.* (quoting 20 C.F.R. § 404.1513(a)(2)(i)). "Other medical evidence" is "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the claimant's] impairments." *Id.* (quoting 20 C.F.R. § 404.1513(a)(3)). A statement from physician qualifies as "other medical evidence' rather than a 'medical opinion' . . . [when] the statement does 'not provide any particular manipulative limitations or address what [the claimant can] still do despite her [ailments]." *Id.*

Although the ALJ is required to articulate specific findings of persuasiveness for medical opinions under 20 C.F.R. § 1520c, the same is not required of other medical evidence. *See id.*; *see*

9

*also Felicetti v. Saul*, 2 No. 19-CV-03598-REB, 2021 WL 698670 (D. Colo. Feb. 23, 2021) (holding that the ALJ was not required to assign weight to treating records in the same way as is required for medical opinions). For medical opinions, the ALJ "will articulate how [it] considered the medical opinions . . . from that medical source together in a single analysis using specific factors . . . [t]he two most important [of which] are supportability and consistency with the entire record." *Roy o/b/o Helton*, 2022 WL 17726702, at *3 (quoting 20 C.F.R. § 404.1520c(b)(1)) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520c(c) (listing factors for ALJ's analysis). The ALJ is not required to articulate the persuasiveness of other medical evidence with reference to supportability and consistency; instead, the ALJ must consider it with all other evidence in the record to make a "determination or decision based on [consistent and sufficient] evidence." 20 C.F.R. 1520b(1); *see also Roy o/b/o Helton*, 2022 WL 17726702, at *4 ("The ALJ specifically noted Dr. Hussain's statement, but then noted other evidence . . . that supported the ALJ's assessment. The ALJ thus considered the statement, as required by §§ 404.1513(a)(3).").

      M.H. provided the ALJ with two letters from Dr. Young: the first from May 10, 2017, and the second from July 18, 2018 (A.R. at 993–95). M.H. provided an additional letter from Dr. Young, dated November 29, 2020, to the Appeals Council (A.R. at 72). M.H. argues that the 2020 letter lends persuasive value to Dr. Young's earlier letters, which were before the ALJ (ECF No. 10 at 11–12). However, because the 2020 letter was not presented to the ALJ and because the Appeals Council made no error in its conclusion that the 2020 letter was without reasonable probability of changing the ALJ's decision, the Court will not further address the 2020 letter, and will only consider the 2017 and 2018 letters.[4]

---

[4] As noted earlier, Dr. Young's 2020 and 2018 letters discuss similar concerns and impairments (A.R. at 72, 994–95).

Dr. Young's 2017 letter states that M.H.'s "complicated surgical history and degenerative changes above and below the surgical site cause [her] considerable severe chronic pain and severely altered cervical mechanics . . . [M.H.] is unable to achieve normal neck mechanics in both her mid and lower back" (A.R. at 993). Although the 2017 letter identifies M.H.'s impairments (chronic pain and altered cervical mechanics) and resulting limitations (inability to achieve normal neck mechanics), the limitations are not explicitly related to the "ability to perform physical demands of work activities." *Roy o/b/o Helton*, 2022 WL 17726702, at *3 (quoting 20 C.F.R. § 404.1513(a)(2)(i)). Dr. Young's 2018 letter details M.H.'s mental health concerns and supplies treatment plan information, neither of which identify any work-related limitations resulting from M.H.'s impairments (A.R. at 994–95). Therefore, Dr. Young's letters are "other medical evidence," not "medical opinion[s]," and the ALJ was not required to evaluate them using the factors contained in 20 C.F.R. § 404.1520c(c), nor was the ALJ required to articulate their persuasiveness under 20 C.F.R. § 404.1520c(b)(1). *See Roy o/b/o Helton*, 2022 WL 17726702 at *3; 20 C.F.R. § 1513(a)(3).

Nonetheless, the ALJ treated Dr. Young's letters as medical opinions (A.R. at 135–36). The ALJ considered the supportability and consistency of the letters and articulated specific findings of the letters' persuasiveness (A.R. at 135–36). *See* 20 C.F.R. § 404.1520c(c) (listing factors). The ALJ articulated that she found Dr. Young's letters unpersuasive because Dr. Young is not a mental health or gastrointestinal specialist and because Dr. Young's letters were inconsistent with other evidence in the record (A.R. at 135–36). The ALJ applied the correct legal standard by considering the letters in making her final determination, and the ALJ's finding that the letters were not persuasive was supported by substantial evidence. *See, e.g., Roy o/b/o Helton*, 2022 WL 17726702 at *3 (providing the legal standard for the ALJ's consideration of other

11

medical evidence); *Pisciotta*, 500 F.3d at 1075 (defining substantial evidence). The ALJ made no error in finding Dr. Young's letters unpersuasive as she was not required to articulate a finding of persuasiveness regarding them. *See id.*

### C. Dr. Kuprian's Opinion

M.H. contends that the ALJ erred in "fail[ing] to articulate how persuasive she found the opinion of Dr. Kuprian" (ECF No. 10 at 12). The Commissioner responds that Dr. Kuprian did not author a medical opinion and further, if Dr. Kuprian's letter did contain a medical opinion, it is on an issue that is reserved to the Commissioner and is therefore "inherently neither valuable nor persuasive" (ECF No. 15 at 13, 16). The Court disagrees with the Commissioner; Dr. Kuprian's letter is a medical opinion and the ALJ erred by failing to articulate its persuasiveness.

Dr. Kuprian's letter, dated April 2017, supplies that M.H. "has been suffering from Cervical Disc Disease . . . with increasing symptoms of chronic pain, limitation of motion and flexion, loss of functional use of her neck, . . . chronic and often debilitating headaches, inability to focus or concentrate, inability to remain sedentary or viewing [sic] a computer monitor" (A.R. at 996). Dr. Kuprian's opinion identifies M.H.'s impairments (cervical disc disease and the associated symptoms) and explicitly describes the limitations of those impairments as they relate to her ability to perform work-related activities (i.e., remaining sedentary for long periods of time and viewing a computer screen) (A.R. at 996). *See Roy o/b/o Helton*, 2022 WL 17726702, at *3 (defining 'medical opinion'). Dr. Kuprian's letter, therefore, is a medical opinion under 20 C.F.R. § 404.1513(a)(2)(i). *See id.*

As the Commissioner correctly observes, three sentences in Dr. Kuprian's opinion addressed M.H.'s ability to return to work, which is an issue reserved for the Commissioner (A.R. at 996; ECF No. 15 at 16). All three sentences are similar in substance, and supply that it is Dr.

12

Kuprian's "professional opinion that [M.H.] is no longer able to perform her job . . . or any similar job." (A.R. at 996). The rest of Dr. Kuprian's opinion regards M.H.'s work-related functional limitations, for instance, her inability to remain sedentary for long periods (A.R. at 996).

"[O]pinion statements that the claimant is able or not able to work—determinations which are reserved to the Commissioner—are 'inherently neither valuable nor persuasive,' and the ALJ is not required to 'provide any analysis about how [the ALJ] considered such evidence in [his] determination or decision." *L.A.M. v. Kijakazi*, No. 21-CV-00983-NYW, 2022 WL 3139031, at *13 (D. Colo. Aug. 4, 2022) (quoting 20 C.F.R. § 404.1520b(c)(3)(i)). The Court agrees with the Commissioner that the ALJ is not required to consider opinion statements regarding a claimant's ability to work (the "final issue"), but the Commissioner has supplied no law or argument in support of the contention that statements about functional limitations are equally valueless simply because they are contained in the same document as an opinion about the final issue (*see* A.R. at 16; ECF No. 15 at 16).

The ALJ did not analyze or articulate the persuasiveness of Dr. Kuprian's medical opinion because she determined that it "related to a finding of disability by the claimant's employer and/or insurer and [is] not persuasive under our regulations" (A.R. at 135). However, 20 C.F.R. § 404.1513(a)(5) supplies that an ALJ will consider a prior administrative medical finding that was written for another agency's disability determination even if it contains a conclusion on the disability status of the claimant. Specifically, when a prior administrative medical finding is in the record before the ALJ, the ALJ must consider all relevant parts of the finding "other than the ultimate determination about whether [the claimant is] disabled." 20 C.F.R. § 404.1513(a)(5). Medical opinions are inherently valueless and unpersuasive in virtue of addressing an issue reserved to the Commissioner when they opine exclusively about the claimant's ability to return

13

to work and "fail to address what [the claimant] could still do despite [her] impairments and fail . . . to describe work-related limitation." *Foy v. Kijakazi*, No. CIV 20-1114 KBM, 2022 WL 1288474 at *14 (D.N.M. Apr. 29, 2022). Based on the relevant law, the Court concludes that the ALJ was required to articulate the persuasiveness of Dr. Kuprian's opinion as it related to M.H.'s physical abilities, but not as it related to the final issue of M.H.'s ability to return to work. *See Roy o/b/o Helton*, 2022 WL 17726702, at *3 (discussing the ALJ's duty to articulate the persuasiveness of medical opinions).

By failing to articulate the persuasiveness of Dr. Kuprian's medical opinion regarding M.H.'s functional limitations as required by 20 C.F.R. § 404.1520c(b)(1), the ALJ did not apply the correct legal standard. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (concluding that ALJ's failure to apply proper legal standard is grounds for reversal); *Pisciotta*, 500 F.3d at 1075 (courts review ALJ's findings to ensure correct legal standards were applied). For this reason, and because the Court cannot reweigh the evidence on appellate review of the ALJ's findings, remand is appropriate to allow the ALJ to weigh and articulate the persuasiveness of Dr. Kuprian's medical opinion. *See id.*; *Flaherty*, 515 F.3d at 1070.

### D.  Consistency of M.H.'s Testimony and Medical Evidence

M.H.'s final argument is that the ALJ erred in the residual functioning capacity (RFC) assessment because the ALJ's decision did not "contain specific reasons for the weight given to the individual's symptoms, [was not] consistent with and supported by the evidence, and [was not] clearly articulated" (ECF No. 10 at 13). Specifically, M.H. points to: (1) the ALJ's failure to include M.H.'s decreased cervical range of motion and associated neck pain in the RFC assessment; (2) the ALJ's use of M.H.'s activities of daily living to contradict M.H.'s claim that she is limited to sedentary functioning; and (3) the ALJ's failure to discuss the uncontroverted

14

claims by M.H. that she had difficulty traveling (ECF No. 10 at 14–16). The Commissioner responds that "[s]ubstantial evidence supports the ALJ's finding that [M.H.]'s subjective complaints were inconsistent with the record, including normal examination findings, successful and conservative treatment, and her wide ranging activities of daily living, including long distance travel" (ECF No. 15 at 8). The Court agrees with M.H. that the ALJ erred in failing to address M.H.'s limited cervical range of motion and associated neck pain in the RFC assessment.[5]

Between steps three and four, the ALJ assesses the claimant's RFC, which "reflects 'the maximum degree to which the [claimant] retains the capacity for sustained performance of the physical-mental requirements of jobs.'" *Allen*, 357 F.3d at 1142 (quoting 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c)). The RFC assessment involves a determination of credibility of the claimant's statements and testimony about their symptoms. *See, e.g., McFerran v. Astrue*, 437 F. App'x 634, 637 (10th Cir. 2011). "Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa v. Astrue,* 569 F.3d 1167, 1171 (10th Cir. 2009). An ALJ's decision regarding the consistency of the claimant's testimony and medical records must "contain specific reasons for the finding on credibility, supported by the evidence in the case record and [be] sufficiently specific to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight." *McFerran*, 437 F. App'x at 637 (quoting *Hayden v. Barnhart,* 374 F.3d 986, 992 (10th Cir. 2004)) (internal quotations omitted).

---

[5] The ALJ's failure to consider M.H.'s limited range of motion and neck pain in the RFC assessment is reversible error. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (remanding where the record did not contain substantial evidence in support of the RFC assessment). Therefore, the Court does not reach M.H.'s additional arguments regarding the ALJ's reliance on M.H.'s daily living and the ALJ's failure to address M.H.'s claims of difficulty travelling. *See id.* ("Because we reverse and remand for additional proceedings at step three, it is unnecessary for us to reach appellant's contentions of error at step five.")

The RFC, through hypotheticals posed to a vocational expert, is used to determine whether the claimant is capable of performing past relevant work (step four) or other work in the national economy (step five). *See, e.g., Allen*, 357 F.3d at 1142–43. When performing an RFC assessment, the ALJ must "consider the combined effects of impairments that may not be severe individually, but which in combination may constitute a severe medical disability." *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991). An ALJ's failure to consider all of a claimant's impairments results in an RFC that "cannot constitute substantial evidence to support the [ALJ]'s decision." *Id.* (quoting *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990)). Although the ALJ is not required to discuss all evidence presented, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1010.

The ALJ determined that "[M.H.]'s statements about the intensity, persistence, and limiting effects of her symptoms [are] inconsistent with the record of normal physical and mental examination findings" (A.R. at 134). However, M.H.'s reduced cervical spine range of motion and resulting neck pain are consistent with the record (A.R. at 134, 934, 993). For instance, Dr. Monet Meter, an examining physician whose opinion the ALJ found to be persuasive, determined that M.H. could sit, stand, or walk for more than five hours in an eight-hour workday, but that sitting, standing, or walking for an "extended period may exacerbate [M.H.'s] neck pain" (A.R. at 134, 934). Further, every physician that examined M.H., and one non-examining physician, determined that she suffered from some form of pain, frequently neck pain consistent with cervical disc disease (A.R. at 200, 934, 993, 995, 945–48). Nonetheless, the ALJ did not discuss M.H.'s neck pain and dismissed M.H.'s subjective complaints as "inconsistent with the record of normal . . . examination findings" (A.R. at 134).

16

The Commissioner argues that the ALJ did not err in failing to consider M.H.'s neck pain in the RFC assessment because "the ALJ did not doubt that [M.H.] had an impairment that could cause neck pain." (ECF No. 15 at 11). However, this statement is unsupported by the record; the ALJ did not discuss M.H.'s uncontroverted neck pain in the written decision or RFC assessment (A.R. at 123–38). Although the ALJ noted that "[M.H.] demonstrated reduced cervical spine range of motion in all four planes," the ALJ neither included this limitation in the RFC assessment nor discussed her reasons for not including it (A.R. at 133). By failing to discuss "the uncontroverted evidence [the ALJ chose] not to rely upon," the ALJ did not apply the correct legal standard in assessing M.H.'s RFC. *Clifton*, 79 F.3d at 1010.

During the ALJ's examination of the vocational expert, the ALJ posed hypotheticals based on the ALJ's RFC determination (A.R. at 133–36, 174). The most restrictive hypothetical posed, matching the ALJ's RFC finding, was an individual that could lift and/or carry fifteen pounds occasionally and 10 pounds frequently, who could stand and/or walk for six hours in an eight-hour workday, who could frequently balance, stoop and finger with the right hand, and who could occasionally kneel, crouch, crawl, and climb ramps and stairs (A.R. at 174–75). The vocational expert's responses demonstrated that an individual with these limitations could not perform M.H.'s past work but could perform other work in the national economy (A.R. at 174–76). The ALJ used the vocational expert's testimony to determine whether M.H. was disabled within the meaning of the Social Security Act (A.R. at 123–38). An inaccurate RFC and inaccurate vocational expert testimony cannot amount to substantial evidence in support of a disability determination. *See Hargis*, 945 F.2d at 1491; *Allen*, 357 F.3d at 1142.

The ALJ did not include M.H.'s neck pain and limited range of cervical motion in the RFC determination or the hypotheticals, nor did the ALJ discuss the reason she rejected the multiple

17

uncontroverted medical findings of M.H.'s neck pain and limited motion (A.R. at 120–78). Because there is nothing in the record explaining the ALJ's dismissal of this evidence, the resulting RFC determination and the ALJ's conclusion on M.H.'s disability status are not supported by substantial evidence. *See Hargis*, 945 F.2d at 1491 (determining that an RFC assessment that does not consider all the claimant's impairments cannot be substantial evidence in support of a finding of not disabled). As this Court will not reweigh the evidence, remand is appropriate to allow the ALJ to either include all of M.H.'s uncontroverted limitations in the RFC assessment or articulate why these limitations were dismissed. *See Clifton*, 79 F.3d at 1010 (holding that remand was appropriate where RFC did not include all limitations and ALJ did not articulate the reason for exclusion of certain limitations).

## IV.  CONCLUSION

For the reasons set forth above, the Court AFFIRMS IN PART and REVERSES IN PART the Commissioner's decision denying M.H. disability insurance benefits, and REMANDS for further proceedings consistent with this Order.

DATED this 8th day of March 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge